Michael Faillace [MF-8436]
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 2540
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ISAHID HERNANDEZ, *individually and on behalf of others similarly situated,*

*Plaintiff,*

-against-

LOCO 111 INC. (d/b/a SAN LOCO),
LOCO 124, INC. (d/b/a SAN LOCO),
JILL HIGGINS, KIMO HIGGINS,
and TINO QUINTANA,

*Defendants.*

-------------------------------------------------------X

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

Plaintiff Isahid Hernandez ("Plaintiff Hernandez" or "Ms. Hernandez"), individually and on behalf of others similarly situated, by and through her attorneys, Michael Faillace & Associates, P.C., alleges upon information and belief, and as against each of defendants Loco 111 Inc. (d/b/a San Loco), Loco 124, Inc. (d/b/a San Loco) ("Defendant Corporations"), Jill Higgins, Kimo Higgins and Tino Quintana (collectively, "Defendants"), as follows:

**NATURE OF ACTION**

1.     Plaintiff Hernandez is a former employee of Defendants Loco 111 Inc. (d/b/a San Loco), Loco 124, Inc. (d/b/a San Loco), Jill Higgins, and Kimo Higgins.

2.     San Loco are two Tex-Mex restaurants owned by Jill Higgins and Kimo Higgins, located at 111 Stanton Street, New York, New York 10002 (hereinafter "the Stanton street

location"), and at 124 Second Avenue, New York, New York 10002 (hereinafter "the Second Avenue location").

3.      Upon information and belief, individual Defendants Jill Higgins and Kimo Higgins serve or served as owners, managers, principals or agents of Defendant Corporations and through these corporate entities operate the Tex Mex restaurants.

4.      Upon information and belief, individual defendant Tino Quintana was a cook at defendants' Stanton Street location.

5.      Plaintiff Hernandez is a former employee of Defendants.

6.      Plaintiff Hernandez was employed as a cook and porter.

7.      At all times relevant to this Complaint, Plaintiff Hernandez worked for Defendants in excess of 40 hours per week, without receiving the applicable minimum wage or appropriate compensation for the hours over 40 per week that she worked.

8.      Rather, Defendants failed to maintain accurate recordkeeping of her hours worked, failed to pay Plaintiff Hernandez the applicable minimum wage, and failed to pay her appropriately for any hours worked over 40, either at the straight rate of pay or for any additional overtime premium.

9.      Further, Defendants failed to pay Plaintiff Hernandez the required "spread of hours" pay for any day in which she had to work over 10 hours a day.

10.      Defendants' conduct extended beyond Plaintiff Hernandez to all other similarly situated employees.

11.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Hernandez and other employees to work in excess of forty (40)

hours per week without providing them the minimum wage and overtime compensation required by federal and state law and regulations.

12.    Plaintiff Hernandez now brings this action on behalf of herself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL") §§190 and 650 *et seq.*, and "overtime wage order" respectively codified at N.Y.C.R.R. Tit. 12 §§ 142-2.2, 2.4), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

13.    Plaintiff Hernandez seeks certification of this action as a collective action on behalf of herself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

14.    Additionally, Plaintiff Hernandez brings the present action for Defendants' violation of the New York Executive Law § 290, *et seq.* ("New York State Human Rights Law") and the New York City Human Rights Law, Administrative Code of the City of New York §§ 8-10, *et seq.* ("New York City Human Rights Law"), for sex discrimination and hostile work environment/sexual harassment. Plaintiff Hernandez further brings an action in civil battery for offensive intentional sexual contact.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiff Hernandez's state law claims is conferred by 28 U.S.C. § 1367(a).

16.    Venue is proper in this district under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiff Hernandez was employed by Defendants in this district.

## PARTIES

### *Plaintiff*

17.    Plaintiff Hernandez is an adult individual residing in Queens County, New York.

18.    Plaintiff Hernandez was employed by Defendants from approximately August 2016 until on or about January 6, 2017.

19.    Plaintiff Hernandez consents to being a party pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

### *Defendants*

20.    At all times relevant to this complaint, Defendants own, operate, and/or control two Tex-Mex restaurants located at 111 Stanton Street, New York, New York 10002 and 124 Second Avenue, New York, New York 10002 under the name "San Loco."

21.    Upon information and belief, Loco 111 Inc. ("Defendant Corporation") is a Corporation organized and existing under the laws of the State of New York.  Upon information

4

and belief, it maintains its principal place of business at 111 Stanton Street, New York, New York 10002.

22.     Upon information and belief, Loco 124, Inc. ("Defendant Corporation") is a Corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 124 Second Avenue, New York, New York 10002.

23.     Defendant Kimo Higgins is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Kimo Higgins is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations.

24.     Defendant Kimo Higgins possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

25.     Defendant Kimo Higgins determined the wages and compensation of the employees of Defendants, including Plaintiff Hernandez, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

26.     Defendant Jill Higgins is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Jill Higgins is sued individually in her capacity as an owner, officer and/or agent of Defendant Corporations.

27.     Defendant Jill Higgins possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

28.    Defendant Jill Higgins determined the wages and compensation of the employees of Defendants, including Plaintiff Hernandez, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

29.    Defendants operate two Tex-Mex restaurants located at 111 Stanton Street, New York, New York 10002 and 124 Second Avenue, New York, New York 10002, under the name San Loco.

30.    Individual Defendants Jill Higgins and Kimo Higgins possess operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

31.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

32.    Each Defendant possessed substantial control over Plaintiff Hernandez's (and others similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Hernandez, and all similarly situated individuals, referred to herein.

33.    Defendants jointly employed Plaintiff Hernandez, and all similarly situated individuals, and are Plaintiff Hernandez's (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

34.    In the alternative, Defendants constitute a single employer of Plaintiff Hernandez and/or similarly situated individuals.

35.    Upon information and belief, individual defendants Jill Higgins and Kimo Higgins operate Defendant Corporations as either alter egos of themselves, and/or fail to operate Defendant Corporations as legal entities separate and apart from themselves by, among other things:

> (a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporations as  separate and legally distinct entities;

> (b)    defectively forming or maintaining Defendant Corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

> (c)    transferring assets and debts freely as between all Defendants;

> (d)    operating Defendant Corporations for their own benefit as the sole or majority shareholders;

> (e)    operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations or closely controlled entities;

> (f)    intermingling assets and debts of their own with Defendant Corporations;

> (g)    diminishing and/or transferring assets of Defendant Corporations to protect their own interests; and

> (h)    other actions evincing a failure to adhere to the corporate form.

36.    At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and NYLL.

37.    Defendants had the power to hire and fire Plaintiff Hernandez, controlled the terms and conditions of her employment, and determined the rate and method of any compensation in exchange for Plaintiff Hernandez's services.

38.    In each year from 2016 to 2017, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39.    In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. For example, numerous items that were sold in the Tex-Mex restaurants on a daily basis, such as tequila, were produced outside of the State of New York.

### *Individual Plaintiff*

40.    Plaintiff Hernandez is a former employee of Defendants, employed in performing the duties of a cook and porter.

41.    Plaintiff Hernandez seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

### *Plaintiff Isahid Hernandez*

42.    Plaintiff Hernandez was employed by Defendants from approximately August 2016 until January 6, 2017.

43.    At all relevant times, Plaintiff Hernandez was employed by Defendants as a cook and porter.

8

44.     Plaintiff Hernandez regularly handled goods in interstate commerce, such as meat and vegetables produced outside of the State of New York.

45.      Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

46.     Throughout her employment with Defendants, Plaintiff Hernandez regularly worked in excess of 40 hours per week.

47.     From approximately August 2016 until on or about October 2016, Plaintiff Hernandez worked from approximately 6:30 p.m. until on or about 5:00 a.m., on Mondays, from approximately 7:30 p.m. until on or about 8:00 a.m. on Thursdays, from approximately 7:30 p.m. until on or about 6:00 a.m. on Fridays, from approximately 8:00 p.m. until on or about  5:00 a.m. on Saturdays and from approximately 6:30 p.m. until on or about 5:00 a.m. on Sundays at the Stanton Street location (typically 53 hours per week).

48.     From approximately October 2016 until on or about December 2016, Plaintiff Hernandez worked from approximately 6:30 p.m. until on or about 5:00 a.m., on Mondays, from approximately  7:30 p.m. until on or about 8:00 a.m. on Thursdays, from approximately 7:30 p.m. until on or about 6:00 a.m. on Fridays, and from approximately 6:30 p.m. until on or about 5:00 a.m. on Sundays at the Stanton Street location  and from approximately 7:30 p.m. until on or about 6:00 a.m. on Saturdays at the Second Avenue location (typically 54.5 hours per week).

49.     From approximately December 2016 until on or about January 6, 2017, Plaintiff Hernandez worked from approximately 6:30 p.m. until on or about 5:00 a.m., on Mondays, from approximately  9:30 p.m. until on or about 8:00 a.m. on Wednesdays, from approximately 7:30 p.m. until on or about 6:00 a.m. on Fridays, and from approximately 6:30 p.m. until on or about

5:00 a.m. on Sundays at the Stanton Street location  and from approximately 7:30 p.m. until on or about 6:00 a.m. on Saturdays at the second Avenue location (typically 52.5 hours per week).

50.    Throughout her employment with defendants, Plaintiff Hernandez was paid her wages by check.

51.    From approximately August 2016 until on or about January 2017, Defendants paid Plaintiff Hernandez $9.00 per hour.

52.    For a period of 3 weeks in August 2016, defendants paid Plaintiff Hernandez for the overtime hours she worked.

53.    Plaintiff Hernandez's wages did not vary regardless of how many additional hours she worked in a week.

54.    For example, Defendants required Plaintiff Hernandez to start working 30 minutes prior to her regular start time every day and to work 30 minutes to one hour past her regular departure time every day and did not compensate her for the additional time they required her to work.

55.    Defendants never granted Ms. Hernandez break periods of any kind during her work hours.

56.    Plaintiff Hernandez was never notified by Defendants that her tips were being included as an offset for wages.

57.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Hernandez's wages.

58.    Defendants illegally withheld some of the tips that Plaintiff Hernandez earned from customers.

59.    Specifically, Defendants withheld 60% of the tips that clients gave Plaintiff Hernandez.

60.    Defendants did not provide Plaintiff Hernandez with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

61.    Plaintiff Hernandez was not required to keep track of her time, nor to her knowledge did the Defendants utilize any time tracking device, such as a time clock or punch cards, that accurately reflected her actual hours worked.

62.    Defendants never provided Plaintiff Hernandez with a written notice, in English and in Spanish (Plaintiff Hernandez's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

63.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez regarding overtime and wages under the FLSA and NYLL.

64.    Defendants required Plaintiff Hernandez to purchase "tools of the trade" with her own funds—including 15 pairs of pants, 3 pairs of non-slip shoes and seven hats.

## SEXUAL HARASSMENT FACTUAL ALLEGATIONS

65.    On repeated occasions while Plaintiff Hernandez performed her work duties, defendant Tino Quintana, a cook at the Stanton Street location, engaged in a pattern of harassing behavior which included touching Plaintiff Hernandez's body against her will.

66.    Specifically, defendant Quintana would get drunk almost every day and would tell Plaintiff Hernandez that he likes her breasts and dark skin and would start touching her body; Plaintiff Hernandez would repeatedly reject him by slapping his hand whenever he touched her.

67.     In response to Plaintiff Hernandez's rejection, defendant Quintana became very nasty and repeatedly screamed at her and pushed her.

68.     Unable to stop defendant Quintana's constant verbal and physical abuse, Plaintiff Hernandez ran downstairs to the basement to change and leave the restaurant; Defendant Quintana followed her to the changing room, and began pulling her from her chef coat and told her he was going to rape her and beat her up for being a bitch.

69.     Plaintiff Hernandez began crying, and left the restaurant; Defendant Quintana ran after her and 20 steps from the restaurant, after she tried to push him away, he pulled her body towards him.

70.     Plaintiff Hernandez complained to Felix, the restaurant manager, but he told her to just be nice to Mr. Quintana.

71.     Although Defendant Quintana stopped the physical abuse, he continued verbally harassing Plaintiff Hernandez by telling her "I really want to fuck you", "you are my type" and "you have a hot body".

72.     On or about November 2016, defendant Quintana, in the middle of his daily drunkenness, got into an argument with the porter; Plaintiff Hernandez told him to calm down because he was drunk and being very aggressive; Defendant Quintana pushed her against the wall and put his hands around her neck; he then pushed her and she hit herself against a chair and hurt herself.

73.     Plaintiff Hernandez complained at least six times to Felix, the restaurant manager about these incidents but he did nothing.

74.     Plaintiff Hernandez then wrote a number of letters to the general manager of the business, but he did not respond; she then called the general manager at least 15 times and he did not respond to her calls.

75.     Instead, in retaliation, Defendants fired Plaintiff Hernandez for allegedly eating a brownie and drinking at work (something all other employees including managers such as Felix and Ramiro constantly did).

76.     Defendants' constant abusive mistreatment of Plaintiff Hernandez has caused her serious mental and emotional distress.

*Defendants' General Employment Practices*

77.     Defendants regularly required Plaintiff Hernandez to work in excess of forty (40) hours per week without paying her the proper minimum wage, overtime compensation and spread of hours pay.

78.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Hernandez (and all similarly situated employees) to work in excess of forty (40) hours per week without paying her appropriate minimum wage and/or overtime compensation, as required by federal and state laws.

79.     Defendants' pay practices resulted in Plaintiff Hernandez not receiving payment for all her hours worked.

80.     Defendants habitually required their employees, including Plaintiff Hernandez, to work additional hours beyond their regular shifts, but did not provide them with any additional compensation.

81.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.  This policy and pattern or practice included depriving tipped employees of a portion of the tips earned during the course of employment.

82.    Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiff Hernandez, and other employees, in violation of New York Labor Law § 196-d (2007).

83.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

84.    Plaintiff Hernandez was paid her wages entirely in cash.

85.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

86.    By employing these practices, Defendants avoided paying Plaintiff Hernandez the minimum wage for her regular hours and overtime compensation of time and a half for all of her hours worked in excess of forty (40) hours per week.

87.    Defendants failed to post required wage and hour posters in the restaurants, and did not provide Plaintiff Hernandez with statutorily required wage and hour records or statements of her pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiff Hernandez's relative lack of sophistication in wage and hour laws.

88.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Hernandez (and similarly situated individuals) worked, and to avoid paying Plaintiff Hernandez  properly for (1) her full hours worked, (2) for minimum wage and (3) for overtime due.

89.     Defendants failed to provide Plaintiff Hernandez  and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

90.     Defendants failed to provide Plaintiff Hernandez  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language of Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

91.     Defendants required Plaintiff Hernandez to provide her own tools for the job, and refused to compensate her or reimburse her for these expenses.

92.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

93.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff Hernandez and other similarly situated current and former employees.

## FLSA COLLECTIVE ACTION CLAIMS

94.     Plaintiff Hernandez brings her FLSA minimum and overtime wages, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in her case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

95.     At all relevant times, Plaintiff Hernandez and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wage, overtime pay of one and one-half times her regular rates for work in excess of forty (40) hours per workweek under the FLSA, willfully taking improper wage deductions and other improper credits against Plaintiff Hernandez's wages for which Defendants did not qualify under the FLSA, and willfully failing to keep records required by the FLSA.

16

96.     The claims of Plaintiff Hernandez stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA MINIMUM WAGE PROVISIONS

97.     Plaintiff Hernandez repeats and realleges all paragraphs above as though fully set forth herein.

98.     At all times relevant to this action, Defendants were Plaintiff Hernandez's employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiff Hernandez (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

99.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

100.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

101.     Defendants failed to pay Plaintiff Hernandez (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

102.     Defendants' failure to pay Plaintiff Hernandez (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

103.     Plaintiff Hernandez (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FLSA OVERTIME PROVISIONS

104.    Plaintiff Hernandez repeats and realleges all paragraphs above as though fully set forth herein.

105.    At all times relevant to this action, Defendants were Plaintiff Hernandez's employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Hernandez (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for her employment.

106.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

107.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

108.    Defendants, in violation of 29 U.S.C. § 207 (a)(1) of the FLSA, failed to pay Plaintiff Hernandez (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

109.    Defendants' failure to pay Plaintiff Hernandez (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

110.     Plaintiff Hernandez (and the FLSA Class members) were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE NEW YORK MINIMUM WAGE RATE**

111.    Plaintiff Hernandez repeats and realleges all paragraphs above as though fully set forth herein.

112.    At all times relevant to this action, Defendants were Plaintiff Hernandez's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Hernandez (and the FLSA Class members), controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

113.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Hernandez (and the FLSA Class members) less than the minimum wage.

114.    Defendants' failure to pay Plaintiff Hernandez (and the FLSA Class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

115.    Plaintiff Hernandez (and the FLSA Class Members) were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK STATE**
**LABOR LAW'S OVERTIME PROVISIONS**

116.    Plaintiff Hernandez repeats and realleges all paragraphs above as though fully set forth herein.

117.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Hernandez (and

the FLSA Class members) overtime compensation at rates of one and one-half times the regular

rate of pay for each hour worked in excess of forty hours in a workweek.

118.    Defendants failed to pay Plaintiff Hernandez (and the FLSA Class members) in a

timely fashion, as required by Article 6 of the New York Labor Law.

119.    Defendants' failure to pay Plaintiff Hernandez (and the FLSA Class members)

overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

120.     Plaintiff Hernandez (and the FLSA Class Members) were damaged in an amount

to be determined at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR**

121.    Plaintiff Hernandez repeats and realleges all paragraphs above as though fully set

forth herein.

122.    Defendants failed to pay Plaintiff Hernandez one additional hour's pay at the

basic minimum wage rate before allowances for each day Plaintiff Hernandez's spread of hours

exceeded ten hours in violation of NYLL §§ 190 *et seq.* and 650 *et seq.* and the wage order of the

New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6.

123.    Defendants' failure to pay Plaintiff Hernandez an additional hour's pay for each

day Plaintiff Hernandez's spread of hours exceeded ten hours was willful within the meaning of

NYLL § 663.

124.    Plaintiff Hernandez was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE NOTICE AND RECORDKEEPING
## REQUIREMENTS OF THE NEW YORK LABOR LAW

125.     Plaintiff Hernandez repeats and realleges all paragraphs above as though fully set

forth herein.

126.     Defendants failed to provide Plaintiff Hernandez  with a written notice, in English

and in Spanish (Plaintiff Hernandez's primary language), of her rate of pay, regular pay day, and

such other information as required by NYLL §195(1).

127.     Defendants are liable to Plaintiff Hernandez in the amount of $5,000, together

with costs and attorney's fees.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE WAGE STATEMENT PROVISIONS
## OF THE NEW YORK LABOR LAW

128.     Plaintiff Hernandez repeats and realleges all paragraphs above as though set forth

fully herein.

129.     Defendants did not provide Plaintiff Hernandez with a statement of wages with

each payment of wages, as required by NYLL 195(3).

130.     Defendants are liable to Plaintiff Hernandez in the amount of $5,000, together

with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
## (RECOVERY OF EQUIPMENT COSTS)

131.     Plaintiff Hernandez repeats and re-alleges all paragraphs above as though set forth

fully herein.

132.     Defendants required Plaintiff Hernandez to pay, without reimbursement, the costs

and expenses for purchasing and maintaining equipment and "tools of the trade" required to

perform her job, such as uniforms, further reducing her wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

133.    Plaintiff Hernandez was damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## (UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION OF THE NEW YORK LABOR LAW)

134.    Plaintiff Hernandez repeat and reallege all paragraphs above as though fully set forth herein.

135.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

136.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

137.    Defendants unlawfully misappropriated a portion of Plaintiff Hernandez's tips that were received from customers.

138.    Defendants knowingly and intentionally retained a portion of Plaintiff Hernandez's tips in violations of the NYLL and supporting Department of Labor Regulations.

139.     Plaintiff Hernandez was damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
## (Sex Discrimination New York Human Rights Law)

140.    Plaintiff Hernandez realleges all paragraphs above as though set forth fully herein. Defendant Tino Quintana directly harassed Plaintiff Hernandez based on gender.

22

141.    Plaintiff Hernandez complained to both Felix the restaurant manager and the business's general manager on repeated occasions about the harassing conduct committed by defendant Quintana, and they failed to take any steps to stop or prevent Mr. Quintana's harassment.

142.    By their conduct and that of their employees and agents alleged above, the defendants unlawfully harassed and discriminated against Plaintiff Hernandez based on gender, in violation of the New York Human Rights Law, N.Y. Exec. L. 296(1) (a).

143.    The defendants acted willfully and in deliberate disregard of Plaintiff Hernandez's civil rights.

144.    Plaintiff Hernandez was damaged by Defendants in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Sex Discrimination New York City Human Rights Law)

145.    Plaintiff Hernandez realleges all paragraphs above as though set forth fully herein.

146.    Defendant Tino Quintana directly harassed Plaintiff Hernandez based on gender.

147.    Plaintiff Hernandez complained to both Felix, the restaurant's manager and the business's general manager about the harassing conduct committed by defendant Quintana, and they failed to take any steps to prevent defendant Quintana's harassment.

148.    By their conduct and that of their employees and agents alleged above, defendants unlawfully harassed and discriminated against Plaintiff Hernandez based on gender, in violation of the New York City Human Rights Law, N.Y.C.A.C. 8-107(1)(a).

149.    Defendants acted willfully and in deliberate disregard of Plaintiff Hernandez's

civil rights.

150.    Plaintiff Hernandez was damaged by Defendants in an amount to be determined at

trial.

## TWELTH CAUSE OF ACTION
### (CIVIL BATTERY)

151.    Plaintiff Hernandez hereby repeats and realleges all paragraphs above as though

set forth fully herein.

152.    Defendant Tino Quintana  intentionally touched Plaintiff Hernandez repeatedly

when she was working from approximately August 2016 until January 2017 by pushing and

pulling her, attempting to strangle her or making her hit a chair.

153.    Such contact was offensive to Plaintiff Hernandez and was without her consent.

154.    Plaintiff Hernandez suffered damages as a result of defendant Quintana's

intentional touching of her, including severe emotional distress.

155.    Plaintiff Hernandez further seeks punitive damages against Defendant Tino

Quintana.

156.    Plaintiff Hernandez suffered harm, discomfort, and emotional trauma as a result

of Defendant Tino Quintana's unwanted physical touching of her.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hernandez respectfully request that this Court enter judgment

against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiff Hernandez in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Hernandez  and the FLSA class members

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Hernandez  and the FLSA class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Hernandez's , and the FLSA class members', compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiff Hernandez  and the FLSA class members;

(f)     Awarding Plaintiff Hernandez and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA, as applicable;

(g)     Awarding Plaintiff Hernandez and the FLSA class members liquidated damages in an amount equal to 100% of her damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA

25

as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Hernandez  and the members of the FLSA Class;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Hernandez  and the members of the FLSA Class;

(j)     Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiff Hernandez and the members of the FLSA Class;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiff Hernandez  and the members of the FLSA Class;

(l)     Declaring that Defendants violated the notice, recordkeeping, and wage statement requirements of the NYLL with respect to Plaintiff Hernandez's , and the FLSA Class members', compensation, hours, wages; and any deductions or credits taken against wages;

(m)     Declaring that Defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiff Hernandez's , and the FLSA Class members', compensation, hours, wages; and any deductions or credits taken against wages;

(n)     Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiff Hernandez  and the FLSA Class members;

(o)     Awarding Plaintiff Hernandez and the FLSA class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages as well as awarding spread of hours pay under the NYLL as

applicable;

(p)     Awarding Plaintiff Hernandez damages for Defendants' violation of the NYLL

notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(q)     Awarding Plaintiff Hernandez and the FLSA class members liquidated damages

in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime

wages, spread of hours pay and damages for any improper deductions or credits taken against

wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(r)     Awarding Plaintiff Hernandez and the FLSA class members pre-judgment and

post-judgment interest as applicable;

(s)      Awarding Plaintiff Hernandez and the FLSA class members the expenses

incurred in this action, including costs and attorneys' fees;

(t)     Declaring that the acts and practices complained of herein as to Plaintiff

Hernandez are in violation of the New York State Executive Law and the New York City Human

Rights Law;

(u)     Awarding Plaintiff Hernandez compensatory damages and all other appropriate

relief under the NYHRL,

(v)     Awarding Plaintiff Hernandez compensatory damages, punitive damages,

attorneys' fees, and all other appropriate relief under the NYCHRL;

(w)     Declaring that Defendants are liable to Plaintiff Hernandez for civil battery;

(x)     Awarding Plaintiff Hernandez compensatory damages as against Defendants for

civil battery in an amount to be determined at trial, but in any event no less than $500,000;

(y)    Awarding Plaintiff Hernandez punitive damages as against Defendants for civil battery in an amount to be determined at trial, but in any event no less than $500,000;

(z)

(aa)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(bb)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Hernandez demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
       January 27, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

_____/s/ Michael Faillace_____ ___
By:    Michael A. Faillace [MF-8436]
       60 East 42nd Street, Suite 2540
       New York, New York 10165
       (212) 317-1200
       *Attorneys for Plaintiff*

28

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 2020
New York, New York 10165
————

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 12, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Isahid Hernandez**

                                  Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                  12 de enero de 2017

Date / Fecha:

*Certified as a minority-owned business in the State of New York*