SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (hereinafter "Agreement") is made by and between Isahid Hernandez ( "Plaintiff") and Loco 111, Inc. (d/b/a San Loco), Loco 124, Inc. (d/b/a San Loco) Jill Hing and Kimo Hing (separately and together referred to hereinafter as "Defendants").

WHEREAS, on or about January 27, 2017, Plaintiff filed a Summons and Complaint in the United States District Court for the Southern District of New York (17-CV-00666)(RA) against Defendants alleging, among other things, violations of the New York State Labor Law and the Fair Labor Standards Act;

WHEREAS, by Stipulation of Partial Voluntary Dismissal executed by counsel for the parties, Counts 10, 11 and 12 of the Complaint, as well as named Defendant Tino Quintana, were voluntarily dismissed from the Action without prejudice (the post-dismissal Complaint shall be referred to hereinafter as the "Action");

WHEREAS, Defendants deny all of Plaintiff's allegations of unlawful conduct; and,

WHEREAS, the parties had a court-ordered mediation before Southern District of New York mediator Terrance J. Nolan, Esq. on June 23, 2017 at which time a settlement was reached pending court approval; and,

WHEREAS, the parties desire to reach a written settlement agreement setting forth the parties' full settlement terms;

NOW, THEREFORE, and in consideration of the promises herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Plaintiff and Defendants agree as follows:

1.  COMPENSATION. (a) in consideration for the dismissal of the Action with Prejudice and Plaintiff's release of claims and covenant not to sue as provided in paragraphs 2, 3, 4, and 5 below and for the other promises made by Plaintiff in this Agreement, Defendants shall pay to Plaintiff and her attorneys the gross sum of Thirteen Thousand Dollars ($13,000) (the "Settlement Amount"). The Settlement Amount shall be paid in four installments as follows:

> On or before 60 days after the Court approves the parties' settlement, the Company shall pay $7,000, as follows: one check to Michael Faillace & Associates, P.C. in the amount of $2,584.62; one check to Isahid Hernandez without withholdings, for which a Form 1099 shall be issued, in the amount of $2,207.69; one check to Isahid Hernandez with withholdings, or which a Form W-2 shall be issued, in the amount of $2,207.69;

On or before 30 days after the issuance of the first payment, the Company shall pay $2,000 as follows: one check to Michael Faillace & Associates, P.C. in the amount of $738.46; one check to Isahid Hernandez without withholdings, for which a Form 1099 shall be issued, in the amount of $630.77; one check to Isahid Hernandez with withholdings, or which a Form W-2 shall be issued, in the amount of $630.77;

On or before 30 days after the issues of the second payment, the Company shall pay $2,000 as follows: one check to Michael Faillace & Associates, P.C. in the amount of $738.46; one check to Isahid Hernandez without withholdings, for which a Form 1099 shall be issued, in the amount of $630.77; one check to Isahid Hernandez with withholdings, or which a Form W-2 shall be issued, in the amount of $630.77;

On or before 30 days after the issuance of the third payment, the Company shall pay $2,000 as follows: one check to Michael Faillace & Associates, P.C. in the amount of $738.46; one check to Isahid Hernandez without withholdings, for which a Form 1099 shall be issued, in the amount of $630.77; one check to Isahid Hernandez with withholdings, or which a Form W-2 shall be issued, in the amount of $630.77;

The Settlement Amount is fully inclusive of any and all attorneys' fees and costs incurred by Plaintiff in connection with the Action. All settlement checks shall be delivered to Plaintiff's attorneys within 60 days of the Court's approval of the Agreement, with any future checks post-dated to the appropriate dates set out herein.

IRS forms W-2 and 1099 shall be issued to Plaintiff and Michael Faillace & Associates, P.C. Employer Identification No. 20-1211098 as follows: 1099 to Michael Faillace & Associates, P.C. in the amount of $4,800; 1099 to Plaintiff in the amount of $4,100; W-2 to Plaintiff in the amount of $4,100

2.      The Settlement Amount will be paid to Plaintiff in exchange for Plaintiff's complete and irrevocable release of all claims and requests for relief contained in the Action, or arising out of the same factual predicate as the Action, as well as the other promises set forth herein.

2(b).   In the event that the Settlement Amount is not paid by the payment dates set forth in paragraph 1 above, or any check fails to clear (i.e., bounces) on its respective payment date, Plaintiff's counsel shall serve a written notice ("Default Notice") upon counsel for the Defendants by overnight registered mail, and the Defendants shall have ten (10) days from the date of delivery of the Default Notice to cure the default by making such payment together with any bank penalties incurred

by Plaintiff and the costs of providing Settling Defendants notice by registered mail. Upon Defendants' failure to cure a default within ten (10) days of delivery of the Default Notice, the full amount of the unpaid balance shall be deemed due and payable. In the event that Defendants default on the payment obligations hereunder, Plaintiff shall be entitled to recover reasonable attorneys' fees and costs in any action for breach of this Agreement.

3. RELEASE. (a) For and in consideration of the promises and obligations set forth in this Agreement, to the fullest extent permitted by law, Plaintiff hereby releases, with prejudice, any and all claims of alleged unpaid wages or violations of the state/federal labor laws or regulations or the like, which she, individually or together with anyone else, has, had or may have against Defendants, individually, jointly and/or severally, or as against Defendants' respective heirs, assigns, parent companies, licensees, affiliates, related entities, subsidiaries, divisions, successors and assigns or their current, former or future officers, directors, employees, attorneys, heirs, and agents (collectively, "Releasees").

(b) This release is intended as a full settlement and compromise of the Action as well as any and all claims that Plaintiff has, had, or may have against the Releasees, jointly and severally, up to and including the date of her execution of this Agreement, for any alleged failure to pay wages or other alleged wage and hour violation and/or record keeping violation under the Fair Labor Standards Act, 29 U.S.C. §201 et seq., the New York State Labor Law Chapter 31 et seq., or any other law, rule, regulation or ordinance, including any claim for attorneys' fees, damages, liquidated damages, injunctive relief, penalties, costs, disbursements and other relief arising out of the Action or the same factual predicate as the Action. With the exception of an action to enforce the terms of this Settlement Agreement, in the event Plaintiff commences any litigation or proceeding that includes any claim waived/released under this Settlement Agreement, she shall pay all of Defendants' attorneys' fees, costs and expenses incurred in defending against such claim.

4. TAXES. Plaintiff agrees and promises to pay all taxes which may be due with respect to the Settlement Payment in the event a governmental taxing authority determines that any such taxes are due.

5. COVENANT NOT TO SUE. Plaintiff agrees, to the fullest extent permitted by law, not to commence, maintain, or prosecute, initiate any investigation, action or proceeding in any court or agency, against any Releasee with respect to any claim released under this Agreement.

6. VOLUNTARY DISMISSAL. If needed to effectuate the settlement, Plaintiff agree to file a Stipulation of Dismissal With Prejudice in the Action pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure.

7.      ATTORNEYS' FEES.  Plaintiff and Defendants each shall be responsible for the full amount of their own attorneys' fees, costs, interest, and expenses.  Specifically, Plaintiff's attorneys' fees shall be taken out of/paid from the Settlement Amount, as set forth in Paragraph 1, above.

8.      REPRESENTATIONS AND ACKNOWLEDGEMENTS

   (a) Plaintiff represents that she has consulted with her attorneys prior to signing this Agreement and that this Agreement is the product of negotiations between her attorneys and the attorney for Defendants.  Plaintiff further represents that:

   (b) She has reviewed each and every provision of this Agreement;

   (c) The Agreement (and each of its terms) has been explained to Plaintiff by her attorneys in both English and Spanish;

   (d) She fully understands each of the Agreement's terms;

   (e) She is entering into this Agreement voluntarily and knowingly, and by her own free will without any duress or coercion.

   (f) Plaintiff further represents that Defendants nor any of their/its agents, representatives, or attorneys made any representations concerning the terms of or effects of this Agreement other than those contained herein, that her decision to sign this Agreement is not based in whole or in part on any statement or promise that does not appear within the four corners of this Agreement and that he have been fairly represented by her attorneys throughout this proceeding.

9.      NON ADMISSIONS

   (a) Plaintiff agrees that Defendants are entering into this Agreement solely for the purpose of avoiding the burdens and expenses of pre-trial, post-trial and appellate proceedings.  Plaintiff understands that by Defendants entering into this Agreement, Defendants are neither acknowledging nor admitting in any way that Plaintiff's claims have merit, or that Defendants engaged in any wrongdoing against Plaintiff or violated any federal, state or local law, statute, order, ordinance, rule, regulation, or contract or common law requirement, duty or obligation.

   (b) Whether or not this Agreement becomes effective, neither this Agreement, nor any exhibits, documents, or instrument delivered hereunder, nor any statement, negotiations, transactions, or proceedings in connection herewith, shall in any event be construed as, or be determined to be, or be offered by Plaintiff in any action or proceeding of any kind as evidence of: (a) an admission or concession on the part of

Defendants of any liability or wrongdoing or of any violation of any federal, state, or local statue, rule, regulation or principle of common law or equity; or (b) an admission or concession on the part of Defendants that Plaintiff has suffered any damage. Additionally, Plaintiff agrees that nothing in this Agreement may be used by any party hereto in any proceeding of any kind for any purpose, except to enforce its terms.

10.   CONSTRUCTION OF AGREEMENT. Should any provision of this agreement require interpretation or construction, it is agreed by the parties that the entity interpreting or construing this Agreement shall not apply a presumption that the provisions hereof shall be more strictly construed against one party by reason of the rule of construction, it being agreed that both parties participated in the provisions of this Agreement.

11.   ENTIRE AGREEMENT. (a) This Agreement constitutes the complete agreement and understanding of the parties, supersedes any prior agreement or understandings of the parties (oral or written) and may be amended only in a writing signed by Plaintiff and Defendants.

(b) If any part, term or provision of this Agreement is declared or determined by any Court to be illegal or invalid, such invalidity or illegality shall not affect the validity of the other provisions of this Agreement, and the illegal or invalid part, term or provision shall be deemed to be severable and not part of this Agreement. Further, should Plaintiff ever seek to challenge the validity of, or otherwise vitiate, this Agreement, she shall, as a precondition, be required to repay to Defendants the amount paid to her under the terms of this Agreement, inclusive of that amount which she has directed be paid to her attorneys.

12.   CHOICE OF LAWS. This Agreement is made and entered into in the State of New York, and shall in all respects be interpreted, enforced, and governed by the laws of said state.

13.   BINDING EFFECT. This Agreement is binding upon, and shall inure to the benefit of, the parties and their respective heirs, administrators, executives, successors and assigns.

14.   EFFECTIVE DATE. This Agreement shall become effective upon the Court "So Ordering" the terms of this Settlement Agreement.

15.   COUNTERPARTS. This Agreement may be executed in separate counterparts (including by facsimile, .pdf or photocopy), each of which is deemed to be an original and all of which taken together constitute one and the same agreement.

**READ THIS SETTLEMENT AGREEMENT AND RELEASE CAREFULLY, CONSULT WITH YOUR ATTORNEY, AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. THIS AGREEMENT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

**WHEREFORE**, the parties hereto have caused this Settlement Agreement and Release to be signed as of the day written below.

_____
Isahid Hernandez

STATE OF NEW YORK            )
                             : ss.:
COUNTY OF _____          )

On this _____ day of _____, 2017, before me personally came Isahid Hernandez, known to me to be the person described in and who executed the foregoing Settlement Agreement and Release, and she duly acknowledged to me that she executed the same.

_____
Notary Public


Loco 111, Inc.

By: _____[signature]_____
Dated 8-24-2017

STATE OF NEW YORK            )
                             : ss.:
COUNTY OF New York           )

On this 24th day of August, 2017, before me personally came Davanith Hing, as the authorized officer of Loco 111, Inc., known to me to be the person described in, did depose that he is the authorized officer of Loco 111, Inc., and who executed the foregoing Settlement Agreement and Release, and he duly acknowledged to me that he executed the same.

_____[signature]_____
Notary Public
For. Davarith Hing

WENJI ZOU
Notary Public – State of New York
NO. 01ZO6354659
Qualified in New York County
My Commission Expires Feb 21, 2021

6

Loco 124, Inc.

By: _____

Dated 8-24-2017

STATE OF NEW YORK )
: ss.:
COUNTY OF _____ )

On this 24 day of August, 2017, before me personally came Dararith Hing_____, as the authorized officer of Loco 124, Inc., known to me to be the person described in, did depose that he is the authorized officer of Loco 124, Inc., and who executed the foregoing Settlement Agreement and Release, and he duly acknowledged to me that he executed the same.

_____
Notary Public       For. Dararith Hing
Dararith Hing
~~Kimo Hing~~

WENJI ZOU
Notary Public – State of New York
NO. 01ZO6354659
Qualified in New York County
My Commission Expires Feb 21, 2021

_____

Dated 8-24-2017

STATE OF NEW YORK )
: ss.:
COUNTY OF New York )

On this 24 day of August, 2017, before me personally came Kimo Hing, known to me to be the person described in and who executed the foregoing Settlement Agreement and Release, and he duly acknowledged to me that he executed the same.

_____
Notary Public
For Dararith Hing

WENJI ZOU
Notary Public – State of New York
NO. 01ZO6354659
Qualified in New York County
My Commission Expires Feb 21, 2021

7

Jill Hing

_____
Dated  8-24-2017

STATE OF NEW YORK        )
                         : ss.:
COUNTY OF New York       )

On this 24 day of August, 2017, before me personally came Jill Hing, known to me to be the person described in and who executed the foregoing Settlement Agreement and Release, and she duly acknowledged to me that she executed the same.

_____
Notary Public
For Jill Hing.

WENJI ZOU
Notary Public – State of New York
NO. 01ZO6354659
Qualified in New York County
My Commission Expires Feb 21, 2021