USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/5/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISAHID HERNANDEZ, *individually and on behalf of others similarly situated*,

Plaintiff,

v.

LOCO 111 INC. (d/b/a SAN LOCO), LOCO 124, INC. (d/b/a SAN LOCO), JILL HIGGINS, KIMO HIGGINS, and TINO QUINTANA,

Defendants.

No. 17-CV-666 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Isahid Hernandez brought this action against Defendants Loco 111 Inc., Loco 124 Inc., Jill Higgins, and Kimo Higgins for alleged violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), wage-and-hour orders of the New York Commissioner of Labor. She also asserted claims for sex discrimination and civil battery based on the conduct of Tino Quintana, who was also a defendant in this case. Before the Court is the parties' application for approval of a settlement agreement. For the reasons set forth below, the Court approves the proposed settlement agreement.

## BACKGROUND

From approximately August 2016 to January 2017, Plaintiff worked as a cook and porter for two Tex-Mex restaurants named San Loco, which were located in Manhattan and were owned by Jill Higgins and Kimo Higgins. Compl. ¶¶ 1, 2, 6, 18 (Dkt. 1). Plaintiff alleges that she worked for Defendants for more than 40 hours per week without receiving the appropriate minimum wage, overtime compensation, or "spread of hours" pay for days when she worked over 10 hours. *Id.* ¶ 7,

8, 9. Plaintiff also alleges that Tino Quintana was a cook at one of the restaurants and that he repeatedly harassed her despite her complaints to the restaurant's managers. Comp. ¶¶ 65, 147.

On January 27, 2017, Plaintiff initiated this action on behalf of herself and others similarly situated, asserting twelve causes of action. *See id.* ¶¶ 94-156. Nine of her claims were for alleged violations of FLSA, NYLL, and orders of the New York Commissioner of Labor. *See id.* ¶¶ 94-139. The remaining claims—Counts 10 to 12—alleged discrimination and civil battery based on the way that Defendant Tino Quintana treated her. *See id.* ¶¶140-56. The Court referred the case for mediation, which was held on June 23, 2017. *See* Dkt. 22, 23. The parties thereafter settled the case. In the proposed agreement, the parties noted that they had stipulated to the voluntary dismissal without prejudice of Defendant Tino Quintana and Counts 10, 11, and 12 of the Complaint. *See* Settlement Agreement and Release at 1 (Dkt. 27). The parties submitted to the Court their agreement, which resolves all the remaining issues in the case, and a letter setting forth their views on why the agreement is fair and reasonable. *See id.*; Dkt. 26. Attached to the letter, Plaintiff's counsel submitted billing records documenting the hours that each of Plaintiff's attorneys worked on the case. *See* Dkt. 26-2.

## LEGAL STANDARD

"To promote FLSA's purpose of ensuring 'a fair day's pay for a fair day's work,' a settlement in a FLSA case must be approved by a court or the Department of Labor." *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *1 (S.D.N.Y. Mar. 24, 2016) (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)). To obtain approval, the parties must demonstrate that their agreement is "fair and reasonable." *Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (citation omitted). "A fair settlement must reflect a reasonable compromise of disputed

issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15-CV-06278 (BCM), 2016 WL 3647603, at *1 (S.D.N.Y. June 29, 2016) (quoting *Mamani v. Licetti*, No. 13-CV-7002 (KMW), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014))). "In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

## DISCUSSION

The Court addresses three aspects of the proposed settlement agreement: (1) the settlement amount, (2) the release provision, and (3) the attorneys' fees provision. The Court finds that each of these provisions is fair and reasonable.

### A. Settlement Amount

Under the proposed settlement agreement, Defendants agree to pay Plaintiff a total of $13,000 in four installments. *See* Settlement Agreement and Release ¶ 1. Plaintiff estimates that her maximum recovery at trial "would have been unpaid wages of $2,350, withheld tips of approximately $9,100, and total damages ... of nearly $35,000"—an amount that would also include "liquidated damages, spread of hours, wage notice and wage statement violations, and prejudgment interest[.]" *See* Fairness Letter at 2 (Dkt. 26). The proposed settlement's $13,000 award thus represents 37 percent of Plaintiff's anticipated maximum recovery.

Under the circumstances of this case, this amount is fair and reasonable. Although it falls short of the maximum amount that Plaintiff asserts she might have recovered at trial, the amount is significant both as a percentage and "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016); *see also Beckert*, 2015 WL 8773460, at *2 (approving a settlement of approximately 25 percent of the maximum possible recovery). In particular, Plaintiff's counsel says that "Defendants consistently challenged [Plaintiff's] allegations," including by "produc[ing] documents that could have been understood to show that [Plaintiff had been] paid legally." *See* Fairness Letter at 3. Given such documentary evidence, Plaintiff might have had difficulty establishing liability based on her own testimony. *See, e.g.*, *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 364 (2d Cir. 2011). Defendants also disputed Plaintiff's allegations that a manager took an improper cut of her tips: according to Defendants, the alleged manager was actually a coworker entitled to a share of the tips. *See* Fairness Letter at 3. Plaintiff's counsel asserts that these disputed facts created serious litigation risk and that Plaintiff would face "a real possibility of no recovery" if she proceeded to trial. *See id.* at 4. This possibility weighs strongly in favor of finding the settlement reasonable. *See Wolinsky*, 900 F. Supp. 2d at 335.

Similarly, Plaintiff's practical concern about her ability to collect a greater sum after trial supports the reasonableness of the settlement amount. *See, e.g.*, *Howard v. Don Coleman Advert. Inc.*, No. 16-CV-5060 (JLC), 2017 WL 773695, at *1 (S.D.N.Y. Feb. 28, 2017) (gathering cases). Defendants informed Plaintiff that they are suffering from significant financial hardship, and Plaintiff represents that one of the two locations owned by Defendant where she worked has already closed. *See* Fairness Letter at 4. Plaintiff's counsel thus reasonably concluded that "there is a credible concern that a post-trial judgment would have been difficult to collect." *Id.*

Other factors also weigh in favor of finding the settlement reasonable: the settlement appears to have been the "product of arm's-length bargaining between experienced counsel" with no evidence of "fraud or collusion." *See Wolinsky*, 900 F. Supp. 2d at 335. Plaintiff's attorneys have significant experience in employment law, including work on federal wage-and-hour cases. *See* Fairness Letter at 5-6. Plaintiff also asserts that the settlement arose "after extensive settlement discussions, including a Court-mandated mediation." *Id.* at 1. And the Final Report of Mediator to the Clerk on the docket reflects that agreement was reached on all issues at that mediation. *See* Dkt. 22. Moreover, settling now, at an early stage in the litigation, will save both parties substantial costs associated with discovery and trial. *See Wolinsky*, 900 F. Supp. 2d at 335. For the above reasons and based on the totality of the circumstances, the Court finds that the parties' proposed settlement amount of $13,000 is fair and reasonable.

**B. Release**

Plaintiff's release of claims is also reasonable. "In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)).

Here, Plaintiff's releases are all tied to her claims in this case, the facts of this case, or to wage-and-hour issues: she releases (1) "all claims for relief *contained in the Action, or arising out of the same factual predicate as the Action*"; (2) "any and all claims of alleged *unpaid wages or violations of the state/federal labor laws or regulations or the like*, which she . . . has, had or may have against Defendants" or entities and individuals related to them; and (3) claims for "*any alleged failure to pay wages or other alleged wage and hour violation and/or record keeping*

5

*violation under the [FLSA], [NYLL], or any other law, rule, regulation, or ordinance*, including any claim for attorneys' fees, damages, liquidated damages, injunctive relief, penalties, costs, disbursements and other relief *arising out of the Action or the same factual predicate as the action.*" *See* Settlement Agreement and Release ¶¶ 2, 3(a), 3(b) (emphasis added). These releases are sufficiently narrow to survive judicial scrutiny, especially given that they were the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel." *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (noting that there is "nothing inherently unfair about a release of claims in an FLSA settlement" in such situations). Thus, the Court finds that the release in the proposed settlement agreement was fair and reasonable.

### C. Attorneys' Fees

Finally, the Court approves the attorneys' fees and costs as allocated in the settlement agreement. According to the proposed agreement, Plaintiff would receive $8,200 and her attorneys would receive $4,800. Plaintiff's attorneys have asserted that they incurred $615 in costs, including the filing fee and for service of process. The Court finds these costs reasonable, and therefore grants the request. *See Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-CV-6667 (PAE), 2015 WL 5122530, at *1 (S.D.N.Y. Aug. 31, 2015). After these costs are subtracted from the total fee award and the attorneys' fee award, the net settlement amount is $12,385. The net attorney's fee award, meanwhile, is $4,185—33.79 percent of the net settlement amount. *See id.* at *1 & n.1 ("The Court's view is that attorneys' fees, when awarded on a percentage basis, are to be awarded based on the settlement net of costs.").

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung*, 226 F. Supp. 3d at 229-30. "A court evaluating attorneys' fees in an FLSA

6

settlement may use either the 'lodestar' method or the 'percentage of the fund' method, but should be guided in any event by factors including: '(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations.'" *Cionca*, 2016 WL 3440554, at *2 (quoting *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016)). Generally speaking, "courts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances." *Santos v. EL Tepeyac Butcher Shop, Inc.*, No. 15-CV-814 (RA), 2015 WL 9077172, at *3 (S.D.N.Y. Dec. 15, 2015); *see also, e.g., Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *3 (rejecting proposed FLSA settlement providing attorneys' fees equal to 39 percent of the total settlement fund); *Run Guo Zhang*, 2015 WL 5122530, at *4 (rejecting 37 percent fee award); *Nights of Cabiria*, 96 F.Supp.3d at 181–82 (rejecting fee award between 40 or 43.6 percent). Here, the proposed $4,185 award is 33.79 percent of the net settlement amount, which is just slightly more—by 0.46 percentage points, amounting to approximately $57 here—than an award of one-third of the net settlement amount. The difference between this award and 33.33 percent is therefore de minimis, and the Court does not find the percentage itself to be excessive.

Moreover, the amount is reasonable when compared to what would be awarded under the lodestar method. *See, e.g., Escobar v. Fresno Gourmet Deli Corp.*, 16-CV-6816 (PAE), 2016 WL 7048714, at *4 (approving a one-third fee award that represented a multiplier of approximately 1.03 of the lodestar amount). The lodestar amount is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," with the reasonable hourly rate defined as the market rate "prevailing in the community for similar services by lawyers of reasonably

7

comparable skill, experience and reputation." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017) (citations omitted). When the lodestar calculation is greater than the attorneys' fee award, the Court "[o]rdinarily" will approve the fee, at least so long as the percentage of the award is reasonable. *See, e.g.*, *Run Guo Zhang*, 2015 WL 5122530, at *4.

Here, Plaintiff's attorneys presented documentation for the three lawyers that they say worked on Plaintiff's case: Michael Faillace, Joshua Androphy, and Marisol Santos. According to that documentation, Mr. Faillace is the managing member of his firm and spent 7.8 hours at a claimed rate of $450 per hour while working on meeting with Plaintiff, researching and drafting the complaint, and filing the complaint; Mr. Androphy is a senior attorney at the firm and spent 6.3 hours at a claimed rate of $400 per hour while working on reviewing documents, drafting letters, preparing for mediation and settlement, and discussing various matters with Plaintiff, Defendants' attorneys, and the Court; and Ms. Santos is a litigation associate and spent 3.85 hours at a claimed rate of $350 per hour while working on reviewing and drafting an EEOC form and charge, discussing the form and charge, as well as mediation, with Plaintiff, and attending mediation. *See* Dkt. 26-2. These fees amounted to $7,377.50 under the lodestar method according to the Plaintiff's calculations. *See id.*; *see also* Fairness Letter at 4.

The Court finds that the number of hours spent by Plaintiff's lawyers were reasonable and that they spent those hours on compensable matters. As for the reasonableness of the specific rates proposed by Plaintiff's counsel, the Court need not determine what exact rates would be the appropriate ones in this case because the attorneys' fees requested in this case would still be reasonable even if Plaintiff's lawyers could not reasonably have been billed at the rates they claim. For example, even if Mr. Faillace had been charged at $300, Mr. Androphy at $225, and Ms.

Santos at $175—amounts readily accepted by courts in this District for partners, experienced attorneys, and associates, respectively, *see Run Guo Zhang*, 2015 WL 5122530, at *3 (gathering cases)—the lodestar would still amount to $4,431.25, nearly $250 more than the proposed fee. The 33.79 percent net attorneys' award is thus less than the lodestar even if the attorneys' rates were substantially reduced. The amount of the fee is therefore reasonable both as a percentage of the net award and based on the lodestar method.

## CONCLUSION

For the reasons stated above, the Court approves the parties' settlement agreement. Plaintiff's counsel will receive $4,800 of the settlement amount, with $4,185 allocated to attorneys' fees and $615 to costs, and the remaining $8,200 will go to Plaintiff. The Court dismisses Counts 1 to 9 of the Complaint with prejudice, and Counts 10 to 12 without prejudice, in accordance with the settlement agreement. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:   December 5, 2017
         New York, New York

_____
Ronnie Abrams
United States District Judge